In Re: Walter LeClaire, No. S0998-03 CnC (Norton, J., Dec. 28, 2004)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                              SUPERIOR COURT
Chittenden County, ss.:                                    Docket No. S0998-03 CnC

IN RE WALTER LECLAIRE

ENTRY

This matter concerns a petition for post-conviction relief. The State has filed a motion for partial summary judgment, arguing that the petitioner, Walter LeClaire, lacks evidence to proceed with some of his ineffective assistance of counsel claims. The court denies summary judgment but reserves judgment on one of the claims raised by the State's motion.

On February 22, 2001, LeClaire was convicted of second-degree murder for the shaking death of a 16-month-old girl. He was represented by Attorney Robert Andres prior to and throughout the guilt-phase of the trial. Following conviction, the court sentenced LeClaire to life in prison without parole. He subsequently filed the instant petition.

This petition has a rather tortured procedural posture that bears explanation. LeClair first filed his petition pro se. When he obtained counsel, his counsel amended the petition, replacing it entirely with essentially two ineffective assistance of counsel claims: (1) Andres failed to prepare LeClaire to testify and inform him that he had a right not to testify and (2) Andres consumed alcohol throughout the trial. The state then filed a motion for summary judgment with regard to these two claims. LeClaire has since amended his petition twice. First, he added another ineffective assistance claim that

Andres failed to inform him of a plea offer. Second, he added a claim seeking relief from the court's sentence pursuant to Blakely v. Washington, 124 S. Ct. 2531 (2004).

Since these amendments, the parties have fully briefed the State's first summary judgment motion. The State, however, has filed a second summary judgment motion regarding LeClaire's Blakely claim. Because LeClaire has not yet responded to this motion, the court reserves judgment until the parties fully brief this claim. Therefore, this order addresses only the State's first summary judgment motion.

Summary judgment is appropriate where there is no genuine issue as to any material fact and a party is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3). The party opposing a summary judgment motion is entitled to the benefit of all reasonable doubts and inferences, but the party must support allegations to the contrary with specific facts sufficient to create a genuine issue of material fact. Samplid Enters., Inc. v. First Vt. Bank, 165 Vt. 22, 25 (1996). Considering the parties' statements of fact and supporting evidence, the court makes the following findings of fact for the purposes of this summary judgment motion.

## LACK OF PREPARATION CLAIM

LeClaire was tried and convicted of second-degree murder in the shaking death of 16-month-old Alexis Cormier. The conviction was affirmed by the Vermont Supreme Court. See State v. LeClaire, 175 Vt. 52 (2003). After Alexis's death, LeClaire's defense was that his dog knocked Alexis over and that she struck her head on a toolbox.

Medical evidence at LeClaire's trial, including a CAT scan and expert witness testimony, revealed that Alexis "endured significant trauma to her brain with enough force to cause bleeding in several areas, dramatic retinal hemorrhages, and retinal detachment." Id. ¶ 2. Expert witness Dr. Robert Moley testified at trial that he had never seen a more dramatic example of a retinal injury consistent with a baby who had been shaken.

LeClaire testified at trial that his dog had caused Alexis's accident and claims Andres did not prepare him to take the stand nor inform LeClaire he had a right not to testify. Indeed, LeClaire claims that Andres did not speak with him for more than half an hour total between the date of his arrest and the beginning of his trial and he did not know he was going to testify until the last day of trial.

Petitioner claims he does not read well and was not prepared to handle cross-examination. Because of these circumstances, the prosecution continually impeached LeClaire on cross-examination.

Experts testified that LeClaire's version of events was not consistent with Alexis's injuries. The Supreme Court relied on the weight of this expert testimony in affirming the trial court's denial of LeClaire's motion for judgment of acquittal.

ALCOHOL CLAIM

LeClaire presents ample testimony from several witnesses supporting the fact that Andres consumed alcohol during the course of the trial. LeClaire also testified that he "noticed a marked difference in my attorney's behavior after lunch, which lead [sic] me to the conclusion that he had been drinking alcohol at lunch."

Andres denies being under the influence of alcohol "or any other substance" at trial.

In order to succeed with a claim for ineffective assistance of counsel, LeClaire must meet a two-prong test by a preponderance of the evidence. First, he must show that Andres's performance fell below an objective standard of attorney performance informed by prevailing professional norms. Second, LeClaire must show that there is a reasonable probability that, but for Andres's unprofessional errors, the proceedings would have resulted in a different outcome. In re Grega, 2003 VT 77, ¶ 7 (mem.). With respect to the second "prejudice" prong, a "'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" In re Miller, 168 Vt. 583, 584 (1998) (mem.) (quoting Strickland v. Washington, 466 U.S. 668, 694 (1984)).

With respect to LeClaire's first claim of ineffective assistance, the court holds that he has presented enough evidence to defeat summary judgment. A factfinder could reasonably find that Andres's failure to prepare LeClaire to testify fell below prevailing norms of professional conduct in this case. Although LeClaire has not presented evidence to address what the prevailing norm is under these circumstances, the Vermont Rules of Professional Conduct provide that "[a] lawyer shall provide competent representation to a client. Competent representation requires the . . . thoroughness and preparation reasonably necessary for representation." Vermont Rules of Professional Conduct Rule 1.1 (1999). The rules provide probative evidence of the appropriate standard of care that

3

Andres owed to LeClaire consistent with his right to effective representation. See id. Reporter's Note—Rule 1.1 ("[T]he rules are presumably admissible as evidence of the standard of care . . . ." (internal quotes omitted)).[1]

The fact that the prosecution thoroughly impeached LeClaire on cross-examination with prior inconsistent statements could lead a findfinder to reasonably find that his credibility was seriously damaged in the eyes of the jury at trial. LeClaire's defense relied heavily on his theory that his dog caused the accident. A factfinder could reasonably be persuaded that, had his testimony been more credible at trial, LeClaire might have been able to convince jurors that his version of events was correct. Thus, he could have affected the outcome of the trial. However unlikely LeClaire's theory may be given the mass of expert witness testimony to the contrary, the court is not in a position to rule on this without full development of the evidence and a hearing on the merits. Hence, the court denies summary judgment with respect to this claim.

With respect to his second ineffective assistance claim, LeClaire's affidavits claim that Andres consumed alcohol during trial, and the State's evidence raises a factual dispute on this matter. LeClaire does not provide a link between Andres's alcohol consumption and deficiencies at trial or prejudice, but the court notes that there is a reasonable inference that a "marked difference" in behavior demonstrated deficient representation and this deficient representation could have affected Andres's judgment. In particular, Andres's failure to prepare LeClaire to testify may be explained by alcohol use. The court therefore denies summary judgment so that LeClaire may have an opportunity to develop this claim with a full hearing on the merits.

---

[1]The court notes that an attorney's violation of the Vermont Rules of Professional Conduct is not negligence per se and does not grant LeClaire standing to raise an ineffective assistance claim. See Vermont Rules of Professional Conduct Scope at 4 (1999) ("[The Rules] are not designed to be a basis for civil liability."); see also Strickland, 466 U.S. at 688 ("Prevailing norms of practice as reflected in American Bar Association standards and the like are guides to determining what is reasonable, but they are only guides." (citation omitted)). Rather, the Rules merely provide probative insight into the appropriate standard of care for a lawyer under these circumstances. Ultimately, LeClaire should present evidence regarding an attorney's "reasonableness under prevailing professional norms" in these circumstances, which the State may rebut. Strickland, 466 U.S. at 688. The court relies on the Rules here only for the purposes of this summary judgment ruling.

4

LeClaire argues that the court should adopt a per se rule that a lawyer consuming alcohol at trial is inherently ineffective. Several courts have adopted per se rules or presumptions of prejudice in ineffective assistance claims for egregious deviations of professional norms. The most common example is that of a lawyer who falls asleep during trial. See, e.g., Burdine v. Johnson, 232 F.3d 336, 349 (5th Cir. 2001); Tippins v. Walker, 77 F.3d 682, 686–87 (2d Cir. 1996). However, the court has not found any case that extends such rules or presumptions to alcohol or drug abuse. See, e.g., Frye v. Lee, 235 F.3d 897, 907 (4th Cir. 2000); Barnett v. Collins, 982 F.2d 922, 930 (5th Cir. 1993); People v. Garrison, 765 P.2d 419, 440–41 (Cal. 1989); Payne v. United States, 697 A.2d 1229, 1232 (D.C. 1997). As the U.S. Court of Appeals for the Second Circuit noted in Tippins, a sleeping lawyer is equivalent to no lawyer at all, and a reviewing court cannot determine whether a lawyer's strategy was deficient or prejudicial where the lawyer is effectively not present to begin with. Tippins, 77 F.3d at 686–87. This is not the case with an intoxicated lawyer. One could presumably still present evidence to show that a lawyer's intoxication actually led to representation below the prevailing norms of professional conduct and prejudiced the outcome of the case. Therefore, a per se rule is not appropriate.

Vermont law is consistent with the above case law. The Vermont Supreme Court has discarded the prejudice requirement where defense counsel's performance was so deficient that there was effectively no counsel at all. See, e.g., In re J.B., 159 Vt. 321, 325–27 (1992) (holding counsel's failure to advise juvenile's parents of juvenile's rights against self-incrimination resulted in no meaningful consultation at all and therefore no showing of prejudice required). Here, however, Andres was not effectively absent from the proceeding because of his alcohol use. At most, he was impaired, but LeClaire will still need to prove by a preponderance of the evidence that Andres's impairment led to actual deficiencies in representation and prejudiced the outcome of his criminal trial.

## ORDER

For the foregoing reasons, summary judgment is DENIED. The court reserves judgment with respect to the summary judgment motion regarding the Blakely claim until the parties have had an opportunity to fully brief that issue. LeClaire has until 30 days after the State's November 30, 2004 filing to respond in opposition to summary judgment on the Blakely claim, in accordance with Rule 56(c)(1) of the Vermont Rules of Civil Procedure.

Dated at Burlington, Vermont, Dec. 28, 2004.

_____/s/_____
Judge