2003 VT 73

**STATE of Vermont v. Clayton TURNER**

[830 A.2d 122]

No. 01-428

¶ 1. July 17, 2003. Defendant Clayton Turner was convicted of aggravated assault following a jury trial in Windham District Court. Defendant appeals the court's denial of his motion for judgment of acquittal and motion for a new trial. Defendant claims that the trial court erred in denying his motions because (1) the State presented insufficient evidence that the knife used in the incident was a "deadly weapon"; (2) the trial court committed prejudicial error by allowing a witness to testify that he was threatened by defendant's brother following a juror's request for clarification of the witness's testimony; and (3) the trial court failed to give the jury a proper limiting instruction regarding that witness's testimony. We disagree and affirm.

¶ 2. This appeal arises out of a dispute over a video game. The record demonstrates that on July 2, 2000, defendant stabbed 14 year-old Kyle Wright in the leg with a knife after an unsuccessful attempt to borrow a video game. Defendant was charged with aggravated assault with a deadly weapon under 13 V.S.A. § 1024(a)(2). Following a two-day jury trial, defendant was convicted and subsequently sentenced to three to twelve years imprisonment.

¶ 3. During the course of the trial, several witnesses testified as to the facts of the incident, including Jason Bushey, who was present during the stabbing. Prior to trial, Bushey stated to defendant's investigator that he did not witness the stabbing and signed a written statement to that effect. Bushey also told the police that he did not know defendant or the victim. At trial, Bushey testified that he saw defendant "get mad" and purposely stab Kyle Wright in the leg with a three inch long knife. On direct examination, the State asked Bushey to explain his prior statements. Bushey admitted he had lied previously because he did not "want any bodily harm to be caused to [him] for snitching on somebody," and that he had decided to testify truthfully because "it's not right that Clayton stabbed a 14-year-old kid over a video game." Defense counsel did not object to this testimony.

¶ 4. Following Bushey's testimony, the court asked whether the jurors had questions for the witness.[1] A juror requested clarification of Bushey's testimony regarding his fear of harm for "snitching." Defense counsel objected to the juror's question, arguing that the potential testimony would be more prejudicial than probative. The court overruled this objection, adjourned the jury upon the State's suggestion, and asked Bushey to clarify his previous testimony. Bushey explained to the court that he was afraid of Kenneth Turner, defendant's brother. Defense counsel renewed their objection to this testimony. Upon further inquiry, Bushey claimed that Kenneth Turner threatened to "put [Bushey] in the hospital" if Bushey "snitched" on his brother. Bushey also stated that Kenneth Turner did not in any way indicate that defendant had prompted the threat. Again, defense counsel objected to this testimony, which the court overruled, holding that the testimony was clearly probative. Bushey then testified about Kenneth Turner's threats before the jury, explaining that these threats prompted his prior inconsistent statements.

¶ 5. At the close of the State's case, defendant moved for judgment of acquittal pursuant to V.R.Cr.P. 29(c), arguing that the State did not meet its burden in proving that defendant caused injury to Wright, and that the evidence was not sufficient to prove that defendant used a "deadly weapon." The court denied these motions and charged the jury. No objections were made to the jury instructions. Defendant was convicted of aggravated assault. Defendant moved for judgment of acquittal or a new trial notwithstanding the jury verdict in a post-verdict filing. The court denied these motions. This appeal followed.

¶ 6. On appeal, defendant raises three claims. First, defendant claims that the State presented insufficient evidence that the knife used in the stabbing was a

---

[1] On appeal, defendant attempted to challenge the propriety of allowing jurors to question witnesses by submitting a letter to the clerk of this Court ostensibly adopting the argument briefed by the appellant in *State v. Doleszny*, Docket No. 2001-310. In an order dated November 12, 2002, we found that defendant did not properly raise or brief the issue in accordance with the requirements of V.R.A.P. 28(g), and therefore declined to hear the juror-questioning issue on appeal.

"deadly weapon" as defined by 13 V.S.A. § 1021(3), and that he is therefore entitled to a judgment of acquittal. Second, defendant argues that the trial court committed prejudicial error by allowing Bushey to explain that threats made by defendant's brother caused him to deny knowledge of the stabbing prior to trial. Third, defendant claims the court's admission of Bushey's testimony and subsequent failure to give the jury a limiting instruction regarding the usage of that testimony warrants a new trial. Defendant is incorrect.

¶ 7. Defendant first claims that he is entitled to a judgment of acquittal because the State failed to meet its burden in proving that the knife used in the stabbing was a "deadly weapon." The standard of review for the denial of a V.R.Cr.P. 29 motion for judgment of acquittal is whether "the evidence, when viewed in the light most favorable to the State and excluding any modifying evidence, fairly and reasonably tends to convince a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt." *State v. Delisle*, 162 Vt. 293, 307, 648 A.2d 632, 641 (1994) (internal quotations omitted). A judgment of acquittal is proper only if the State has failed to put forth any evidence to substantiate a jury verdict. *State v. Couture*, 169 Vt. 222, 226, 734 A.2d 524, 527 (1999).

¶ 8. We reject defendant's assertion that the evidence was insufficient to find that the knife used by defendant was a "deadly weapon." Defendant was charged with aggravated assault under 13 V.S.A. § 1024(a)(2). A person is guilty of aggravated assault with a deadly weapon if the defendant "attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon." 13 V.S.A. § 1024(a)(2). A "deadly weapon" is defined as "any firearm, or other weapon, device, instrument, material or substance, whether animate or inanimate which in the manner it is used or is intended to be used is known to be capable

of producing death or serious bodily injury." *Id.* § 1021(3).

¶ 9. Defendant asserts that the knife with which he stabbed Wright was not used or intended to be used in a manner "known to be capable of producing death or serious bodily injury," and that the injury inflicted upon the victim was not "serious bodily injury." Therefore, according to defendant, the knife should not be considered deadly. We disagree. For a weapon to be considered "deadly" under 13 V.S.A. § 1024(a)(2), that weapon need not inflict serious bodily injury. See *State v. Prior*, 174 Vt. 49, 53, 804 A.2d 770, 773 (2002) (a folding knife held to victim's throat, without inflicting any injury, constituted a "deadly weapon"); *State v. Parker*, 139 Vt. 179, 183, 423 A.2d 851, 853 (1980) (a gun, whether loaded or unloaded, is a dangerous weapon when used in the commission of a robbery because it *could be* used as a bludgeon to effect personal injury). It is the manner in which the knife was used or intended to be used and its potential for inflicting serious bodily injury that is determinative. See *State v. Lupien*, 143 Vt. 378, 382, 466 A.2d 1172, 1174 (1983) ("There can be no doubt that a weapon such as numchuks, capable of shattering a clavicle in one quick strike, constitutes a deadly weapon for purposes of 13 V.S.A. § 1024(a)(2)."); cf. *State v. Deso*, 110 Vt. 1, 8, 1 A.2d 710, 714 (1938) ("[A] dangerous weapon is a weapon which in the way it is used or attempted to be used *may endanger* life or inflict great bodily harm.") (emphasis added). Defendant threatened to use the knife on the victim if the video game he sought was not found, stabbed the victim with the knife when the game was not found, and caused a wound requiring stitches. There is no doubt, given the evidence, that a jury could reasonably conclude that the stabbing manner in which the knife was used to inflict injury upon the victim was known by defendant to be capable of producing serious bodily injury. See *State v. Persuitti*, 133 Vt. 354,

361, 339 A.2d 750, 755 (1975) (upholding conviction for aggravated assault on grounds that a metal pipe is a deadly weapon; noting that "[i]f the jurors credited the attack at all, it is difficult to conceive how they could have found the weapon used to be anything other than deadly").

¶ 10. Defendant also claims that the State failed to meet its burden because the knife itself was not entered into evidence. However, if the State fails to introduce the weapon used in the assault, it can meet its burden by introducing testimony about that weapon and the details of the injuries caused, as long as the evidence is sufficient for a reasonable trier of fact to conclude that a deadly weapon was used. See *Prior*, 174 Vt. at 53, 804 A.2d at 773 (victim's description of folding knife during her testimony was considered sufficient for a reasonable trier of fact to conclude that a deadly weapon was used); see also *State v. Miller*, 146 Vt. 164, 169, 502 A.2d 832, 835 (1985) ("Circumstantial evidence will sustain a conviction if it is sufficient to convince a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt.") (citations omitted). Here, Bushey testified that defendant stabbed Wright with a knife approximately three inches long. The victim's mother testified that she saw "a stab, a knife wound" longer than one inch on the back of her son's leg. The victim's wound required stitches. Given this testimonial evidence, a jury could reasonably conclude the knife was a deadly weapon. Accordingly, defendant's argument that the State failed to meet its burden in proving that he used a deadly weapon as defined by 13 V.S.A. § 1021(3) fails.

¶ 11. Defendant's second claim is that he is entitled to a new trial because the trial court committed prejudicial error by allowing Bushey to testify about the threats made by Kenneth Turner. The court may, on motion of the defendant, grant a new trial if required in the interests of justice. V.R.Cr.P. 33. A motion for a new trial under Rule 33 "tests the sufficiency of all the evidence presented at trial and raises the question whether the jury has correctly performed its function of evaluating admittedly adequate evidence." *Couture*, 169 Vt. at 227, 734 A.2d at 527-28 (internal quotations omitted). A Rule 33 motion made on evidentiary grounds should be granted "only upon a conclusion by the trial court that, weighing all the evidence including the credibility of witnesses, the verdict is clearly against the weight of the evidence." Reporter's Notes, V.R.Cr.P. 33. The grant of a new trial is a remedy used sparingly and only in exceptional circumstances. *State v. Trombly,* 148 Vt. 293, 297, 532 A.2d 963, 966 (1987).

¶ 12. Defendant claims that Bushey's testimony asserting he was threatened by Kenneth Turner is inadmissible absent evidence connecting Turner's threats to defendant. Defendant is incorrect. It is axiomatic that evidence, although relevant, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. V.R.E. 403. The general rule is that testimony describing threats against witnesses is inadmissible unless the defendant is linked in some way to those threats. See *State v. Walker*, 571 A.2d 686, 689 (Conn. 1990) (collecting cases so holding). "The reason for the rule is that evidence of threats against witnesses is generally admissible either on the theory that such conduct is inconsistent with the defendant's claim of innocence or on the theory that the making of such threats evinces a consciousness of guilt." *Id.* Without a link to the defendant, evidence of such threats directed toward a witness has no probative value for those purposes. *Id.* at 690.

¶ 13. An exception to the general rule is recognized in cases where evidence of threats explains a witness's prior inconsistent statement. This Court has established that testimony about a threatened

witness can be relevant, probative, and not unfairly prejudicial without proof that the threat is tied to the defendant, if that testimony explains the change in the witness's story. *In re Miller*, 168 Vt. 583, 585, 718 A.2d 419, 421 (1998) (mem.); see also *Walker*, 571 A.2d at 689 (in explaining inconsistent testimony, witness was allowed to testify that she received threats and was initially "too frightened to tell the truth," even though threats could not be tied to defendant); *Washington v. State*, 445 A.2d 684, 686 (Md. 1982) ("[I]t is generally held that evidence of threats to a witness or fear on the part of a witness, in order to explain an inconsistency, is admissible in criminal cases for credibility rehabilitation purposes even if the threats ... have not been linked to the defendant."); *People v. Rivera*, 553 N.Y.S.2d 707, 710 (App. Div. 1990) ("It is appropriate to elicit testimony concerning non-attributable threats made to a witness, where the purpose is to explain inconsistent statements ...."). On cross-examination, defense counsel challenged the credibility of Bushey's testimony based on his previous statements denying knowledge of the stabbing. Bushey's testimony that Kenneth Turner threatened to "put [him] in the hospital" if he were to "snitch" on defendant directly explains the change in Bushey's story and was highly probative for that purpose. The trial court has broad discretion under V.R.E. 403 in determining whether the probative value of testimony outweighs its prejudicial effect, and the burden on defendant to show abuse of that discretion is a heavy one. *Sweet v. Roy*, 173 Vt. 418, 441, 801 A.2d 694, 711 (2002); *State v. Webster*, 165 Vt. 54, 56, 675 A.2d 1330, 1332 (1996). In admitting the testimony of threats directed toward Bushey, the trial court did not abuse its broad discretion. Therefore, defendant's second claim on appeal fails.

¶ 14. Finally, defendant claims that even if Bushey's testimony is admissible, the court should have given the jury an instruction limiting the purpose of that testimony. Absent this limiting instruction, defendant argues, a new trial is warranted. We find defendant's argument unpersuasive. In Vermont, a limiting instruction is generally not required absent a defendant's request. V.R.E. 105. "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, *upon request*, shall restrict the evidence to its proper scope and instruct the jury accordingly." *Id.* (emphasis added). When defense counsel fails to request a limiting instruction or fails to object to the absence of a limiting instruction, a defendant's right to raise this issue on appeal is waived. *State v. Ashley*, 160 Vt. 125, 127, 623 A.2d 984, 985 (1993). In this case, defense counsel did not request a jury instruction limiting the usage of Bushey's testimony regarding the threats made by Kenneth Turner, nor did it object to the jury charge on this point.

¶ 15. An exception to this rule arises if there is a finding of plain error affecting defendant's substantial rights. See V.R.Cr.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."); see also *State v. Holcomb*, 156 Vt. 251, 256, 590 A.2d 894, 897 (1991) ("[F]ailure to give a limiting instruction ... in the absence of a request or objection, will be grounds for reversal only on a finding of plain error."). Recently, this Court found plain error in a case involving prior bad act evidence. *State v. Lipka*, 174 Vt. 377, 389, 817 A.2d 27, 37 (2002) (holding trial court abused its discretion in admitting prior bad act evidence because we could not conclude beyond a reasonable doubt that the jury would still have convicted defendant without the testimony). Prior bad act evidence is generally inadmissible because "once jurors learn of uncharged misconduct, they tend to use an entirely 'different ... calculus of prob-

abilities' in deciding whether to convict." *Id.* at 388, 817 A.2d at 36 (quoting *State v. Forbes*, 161 Vt. 327, 330, 640 A.2d 13, 15 (1993)). However, even in cases involving evidence of prior bad acts, "[i]t is very rare that we find plain error, and the burden to show it is extremely high." *Id.* at 389, 817 A.2d at 37. "We have consistently stated that we will find plain error to warrant reversal of a criminal conviction, absent preservation, only in rare and extraordinary cases where the error so affects the substantial rights of the defendant that we cannot find the trial overall to be fair." *State v. McCarthy*, 156 Vt. 148, 154, 589 A.2d 869, 873 (1991); V.R.Cr.P. 52.

¶ 16. We find no plain error here. Bushey's testimony was admitted for the purpose of explaining his prior inconsistent statements and not to show defendant's propensity to commit the assault. Moreover, Bushey's testimony disassociated defendant from the threats made by Kenneth Turner, and no evidence was introduced linking the threats to defendant. We are persuaded that the evidence supports a conclusion beyond a reasonable doubt that the jury would still have convicted defendant if it had never heard the testimony clarifying Bushey's fear of harm. As such, absent defendant's request, the court was not required to give the jury a limiting instruction, and defendant's final claim on appeal fails.[2]

*Affirmed.*

Note. Justice Morse sat at oral argument but did not participate in this decision.

---

[2] Defendant also claims that he was denied a fair trial because the State improperly used prejudicial speculation in its closing argument to the jury. Defendant failed to object to the State's closing argument, and therefore has not preserved this issue on appeal.