2011 VT 55

**STATE of Vermont v. Isaac FAHAM**

[21 A.3d 701]

No. 09-290

¶ 1. May 18, 2011. Defendant Isaac Faham appeals from his conviction of attempted sexual assault following a jury trial. Defendant was charged with violating 13 V.S.A. § 9 and 13 V.S.A. § 3252(a)(1) by lying on top of complainant and threatening to kill her if she did not have sex with him. On appeal, defendant makes two arguments: (1) the State's evidence was insufficient to prove beyond a reasonable doubt that he was guilty of attempted sexual assault; and (2) the trial court unconstitutionally denied him the opportunity to present a complete and adequate defense by precluding him from introducing evidence of complainant's prior drug use. We affirm.

¶ 2. Complainant's account of the relevant events is as follows. On March 6, 2008, defendant pulled up alongside her in his truck in downtown Burlington. She accepted his offer to go for a ride and smoke marijuana. The drive was "strange," however, and she felt "scared" because she did not know where they were going. Complainant asked defendant a few times where they were going, but he did not respond.

¶ 3. Defendant stopped on a dirt road in an isolated area of Charlotte with few houses and lights. He got out and went behind the truck. Complainant could not see what defendant was doing, but he returned wearing different clothes. Defendant reentered the truck and "got on top of [complainant]." He started "choking" her and said that if she did not have sex with him "he was going to kill [her]." When complainant pleaded with him, he did not stop but "things kind of slowed down a little bit, and he kind of eased up a little bit." It was enough for complainant to jump out of the truck. Complainant wanted to escape, but she ran into defendant at the back of the truck. Complainant asked defendant not to hurt her. He responded by telling her that "he had a lot of problems" and to "get out of here." Defendant drove away, leaving complainant stranded in Charlotte.

¶ 4. Complainant hid behind a tree, "scared" because she did not know what defendant was going to do. She then ran towards a light, hoping to find help, and arrived at the home of Bethany Myrick.

¶ 5. Ms. Myrick testified that at around 11:15 p.m. on the night of March 6 complainant started pounding on her door and "hollering." Ms. Myrick found complainant to be very upset and shaking, and she appeared as if she had been crying. Ms. Myrick further testified that complainant told her she was afraid of a man who "might be trying to get her or kill her." After hearing complainant's story, Ms. Myrick called the police.

¶ 6. A state trooper who arrived at Ms. Myrick's home observed that complainant was "looking around . . . nervously and kept checking behind her" and remained "excited, nervous, [and] fidgety." He described complainant's emotional state as "[s]cared."

¶ 7. Complainant described defendant's vehicle to the state troopers present at the scene. She brought one trooper to the location where defendant's truck had been parked. This trooper was able to see footprints in the snow near where the truck had been stopped, and he collected evidence, including a handcuff key on a chain and a button.

¶ 8. A trooper searched the immediate area for the vehicle described by complainant. He received notice that the Burlington Police had stopped a truck matching the description and went to speak with its driver — defendant. De-

fendant reported that he had been "[w]orking" that evening and that he had been in Charlotte because it was part of his "route for pick-ups." He also told the trooper that he had not picked up anybody else, had been by himself all night, and had been the only person operating the truck that night. The trooper also noticed that defendant's pants were unzipped and his shirt was inside out. Defendant said that his pants were undone because "he was going to the bathroom" and he chose to wear his shirt inside out. The trooper saw that defendant's shirt was missing a button and that the other buttons matched the one found where the truck had been in Charlotte. When questioned about this, defendant replied that "the shirt came like that."

¶ 9. Despite his initial statements to the trooper that he had been alone all evening, defendant subsequently admitted that he "picked the girl up" and they "were going down to party." More specifically, defendant said that "party" meant "[s]moking reefer." Defendant explained to the trooper, "I made my move and I was rejected."

¶ 10. At the end of the State's case, defendant moved for judgment of acquittal under Vermont Rule of Criminal Procedure 29(a), arguing that the State had failed to prove all of the essential elements of the charged crime. The court denied the motion.

¶ 11. Defendant then testified to a different version of events. According to defendant, he had met complainant on four previous occasions, two of which involved driving around together. Defendant testified that during one of these drives he and complainant engaged in consensual oral sex.

¶ 12. Defendant testified that on the night of March 6 he saw complainant on the street and asked her if she knew where he could purchase marijuana and crack cocaine. According to defendant's testimony, complainant drove with defendant to a house where she purchased the drugs for defendant with money he supplied. Defendant testified that the two of them drove around smoking a mixture of the marijuana and crack cocaine. Defendant further testified that complainant had him driving "in circles all night" and that he did not know the roads in the area very well. According to defendant, he drove to Charlotte because complainant told him that she had friends there.

¶ 13. Defendant testified that when he stopped the truck in Charlotte they kept smoking the drug mixture and then started to kiss. At this point he "tried to make a move," but she rejected his advance, angering him. According to defendant, "it was either, you know, we have sex, or, you know," and he was angry because he was running out of the crack cocaine and complainant wanted to smoke more. Defendant attempted to kick complainant out of the car but she refused to get out. Defendant exited the vehicle and "grabbed her by her two arms and yanked her out [of] the truck." He admitted that the handcuff key found by the trooper was his and had been attached to his key chain. Defendant testified that although he physically dragged complainant from the truck, he did not attack her or threaten her. Defendant explained that he drove away, leaving complainant in the road, and then turned around and drove back towards complainant. Complainant was standing in the road, so he "kind of hit the gas a little so to make her move out [of] the way . . . and [] just kept going." Defendant further testified that he then drove to the docks in Charlotte to complete his work for the evening.

¶ 14. A jury found defendant guilty of attempted sexual assault. Defendant filed post-verdict motions for judgment of acquittal and for a new trial. Defendant argued that the State's evidence was insufficient to prove beyond a reasonable doubt that he was guilty of the charged offense and that a new trial should be

526

granted because the evidence presented at trial weighed heavily against the jury verdict. The trial court denied both motions, and defendant was sentenced to five to twelve years imprisonment. This appeal followed.

¶ 15. Defendant first argues that the evidence presented by the State was insufficient to support a conviction of attempted sexual assault. Specifically, defendant contends that the State's evidence was insufficient to prove beyond a reasonable doubt that defendant attempted to engage in a sexual act with complainant, a requisite element of the charged offense. We conclude, however, that this issue was not preserved because defendant failed to renew his motion at the close of the evidence. See V.R.Cr.P. 29(a); *State v. Crannell*, 170 Vt. 387, 407, 750 A.2d 1002, 1019 (2000) (citing Reporter's Notes to Rule 29 that failure to renew motion for acquittal "at close of all evidence forecloses appellate consideration" (quotation omitted)), *overruled on other grounds by State v. Brillon*, 2008 VT 35, 183 Vt. 475, 955 A.2d 1108; *State v. Bressette*, 136 Vt. 315, 316-17, 388 A.2d 395, 396 (1978) (holding that failure to renew motion at close of evidence or file post-verdict motion within ten days forecloses appellate review of any issue as to sufficiency of evidence).

¶ 16. Defendant did file a timely post-verdict motion for judgment of acquittal under Vermont Rule of Criminal Procedure 29(c) based on other objections: the State presented only limited physical evidence and complainant gave contradictory testimony. See V.R.Cr.P. 29(c) (whether or not a motion was made under V.R.Cr.P. 29(a), "a motion for judgment of acquittal may be made or renewed within 10 days after the jury is discharged"); *State v. Brooks*, 163 Vt. 245, 254, 658 A.2d 22, 28 (1995) ("[E]ven if a Rule 29(a) motion is not made, a defendant may properly raise a claim based on insufficiency of evidence by moving under

V.R.Cr.P. 29(c)."). These specific issues were preserved, but they are different issues from the one defendant raises on appeal.

¶ 17. At no point in his post-verdict motion for judgment of acquittal did defendant argue that the State presented insufficient evidence on the element of attempting to engage in a sexual act. Because this issue is unpreserved, we do not reach it. See *State v. Jackson*, 2008 VT 71, ¶ 21, 184 Vt. 173, 956 A.2d 1126 (holding defendant failed to preserve argument that evidence at trial was insufficient to support element of restraint in his conviction for kidnapping when post-verdict motion for judgment of acquittal argued evidence was insufficient to support element of intent); *State v. Barbera*, 2005 VT 13, ¶ 5, 178 Vt. 498, 872 A.2d 309 (mem.) (holding defendant failed to preserve argument that evidence was insufficient to support conviction for sexual assault because evidence did not show sexual contact where defendant only asserted general claim for insufficiency of evidence in post-verdict motion for judgment of acquittal).

¶ 18. Next, defendant asserts that the trial court erred in excluding evidence of complainant's prior drug use. Defendant argues on appeal that evidence of complainant's prior drug use was admissible under Vermont Rule of Evidence 404(b) as context evidence to explain both his relationship with complainant and complainant's motive for riding around with him on the evening of March 6. More specifically, defendant now contends that the evidence was relevant to his defense that complainant fabricated the sexual assault complaint in retaliation for defendant denying her access to the drug mixture and then abandoning her in Charlotte. Defendant asserts that the trial court's exclusion of this evidence violated the Sixth Amendment to the United States Constitution and Article 10 of the Vermont Constitution by denying

him the right to present a complete defense and to confront witnesses against him. We conclude, however, that defendant's proffers below were insufficient to sustain this challenge to the trial court's ruling.

¶ 19. At the initial hearing on the State's pretrial motion to preclude defendant from mentioning at trial complainant's prior drug use, defendant argued that this evidence should come in for "credibility purposes" and would "show[] the real reason they were driving around that night." Per the trial court's request for additional explanatory information, defendant filed a written motion seeking admission of evidence of complainant's prior drug use under Vermont Rules of Evidence 404(b) and 406. Defendant argued that he should be allowed to introduce the evidence under Rule 404(b) "for purposes of showing [complainant's] motive, plan and intent when she got into the car with [him]." Defendant further argued that the evidence was admissible under Rule 406 for showing that complainant makes a "routine or practice of getting into cars with men to acquire narcotics." Defendant sought to use this habit evidence for purposes of impeachment. Defendant did not make any factual proffers in his written motion.

¶ 20. During the subsequent motion hearing, defendant proffered that under Rule 404(b) the evidence would go "to the motive and intent and knowledge of the fact that [complainant] knew [defendant] before [March 6]" because they "got together, rode around, and got high" on one prior occasion. Defendant also argued that evidence of complainant's prior drug use was relevant habit evidence under Rule 406 because complainant "is known to get in cars with gentlemen and . . . engage in drug use . . . and other acts." Defendant proffered that he had at least one witness who would testify to having seen complainant "get in cars with other gentlemen."

¶ 21. The trial court denied defendant's motion from the bench and in a written order. Under Rule 404(b), the trial court ruled that evidence that complainant may have known defendant in the past was admissible, but that evidence of complainant's past drug use was inadmissible under Rule 403 because it would confuse the issues and be time-consuming. Regarding Rule 406, the trial court ruled that none of defendant's proffered evidence "[rose] to the legal definition of habit evidence" and was, instead, a "form of character evidence[,] . . . not habit evidence."

¶ 22. At trial, defendant attempted once again to get in evidence of complainant's prior drug use. Defendant argued that evidence that he and complainant had done drugs together prior to March 6 was "critical" to explain how their relationship developed, explaining that the evidence "goes to the essence of why [complainant] got into the truck with him" that night. The trial court again denied defendant's request, stating that the proffer was identical to that already ruled upon.

¶ 23. At no point did defendant proffer to the trial court — as he does here on appeal — that evidence of complainant's prior drug use was relevant to a defense that complainant fabricated the sexual assault claim. Defendant had no fewer than four opportunities to make this proffer but neglected to do so. Defendant did not suggest below that this evidence was relevant to a defense that complainant fabricated the incident because she was angry that defendant forced her out of the vehicle when she wanted to smoke more rather than have sex with defendant or even that defendant had such a defense. Cf. *State v. Memoli*, 2011 VT 15, ¶ 8, 189 Vt. 237, 18 A.3d 567 (holding that trial court's order excluding evidence of complainant's drug use was error where such evidence was critical to defense theory proposed during motion hearing). Nor did defendant argue that the evidence was admissible as evidence of com-

plainant's motive to falsely accuse defendant of attempted sexual assault. Rather, defendant's proffers in this regard suggested only that the evidence would explain why complainant got into defendant's car on that evening and was admissible "for credibility purposes." The credibility issue had to do mainly with complainant's denial that she had known defendant from a previous occasion, and the trial court permitted defendant to testify to the contrary. These oblique and conclusory proffers were too weak to preserve defendant's theory of the case on appeal.

¶ 24. In addition, defendant appears to suggest on appeal that evidence of complainant's prior drug use was potentially relevant to a defense that, rather than attempting to sexually assault complainant, defendant attempted to have consensual sex with complainant. Again, defendant offers us a theory of admissibility not raised before the trial court. Cf. *Memoli*, 2011 VT 15, ¶ 25 (explaining that trial court erroneously excluded evidence relating to defense theory proffered explicitly at pretrial hearing). Defendant's proffer below that the evidence that he and complainant had "got together, rode around, and got high" on one prior occasion would show complainant's motive, intent, and knowledge did not indicate that defendant intended to show that she, on this occasion, participated in consensual sexual activity in exchange for access to drugs. Defendant also did not proffer that evidence of complainant's prior drug use was relevant because complainant had previously traded sex for access to drugs or because the prior occasion where they "got high" together indicated her motivation on March 6 to have sex with him in exchange for drugs. Needless to say, no evidence was proffered to support other occasions on which complainant allegedly demonstrated a propensity to get into cars with other gentlemen and exchange sex for drugs.

¶ 25. Defendant cites to our recent decision in *State v. Memoli*, where we concluded that evidence of a complainant's drug use preceding and following the charged aggravated sexual assault was erroneously excluded because it precluded him from presenting his defense that the complainant voluntarily exchanged sex for drugs. 2011 VT 15, ¶ 1. Defendant ignores, however, that our decision in that case relied on the fact that defense counsel clearly described to the trial court during the pretrial hearing the relevance of the excluded evidence to the defendant's defense theory of consent for the charged aggravated sexual assault. *Id.* ¶ 8. In contrast, defendant's proffer here was far from explicit, and indeed, defendant himself testified at trial that complainant rejected his sexual advances, which made him angry.

¶ 26. None of defendant's many proffers below were made with the clarity or specificity required to sustain his current claim of error regarding the trial court's exclusion of evidence of complainant's prior drug use. See *State v. Ringler*, 153 Vt. 375, 378, 571 A.2d 668, 670 (1989) (holding defendant failed to preserve argument for appeal where defendant made insufficient proffer to trial court). We therefore review only for plain error.[*] *State v. Brown*, 2010 VT 103, ¶ 12, 189 Vt.

---

[*] Although defendant does not explicitly argue plain error, he does argue that the trial court's exclusion of evidence of complainant's prior drug use was an error that violated his constitutional right to present a defense and to confront witnesses against him. Because, however, defendant does not distinguish how our analysis under Article 10 of the Vermont Constitution should differ from an analysis under the U.S. Constitution's Sixth Amendment, we decline to interpret the Vermont Constitution in this case. See *State v. Forty*, 2009 VT 118, ¶ 23 n.2, 187 Vt. 79, 989 A.2d 509.

88, 15 A.3d 107; see V.R.E. 103(d) ("Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court.").

¶ 27. We will reverse a conviction for plain error only in "exceptional circumstances" — where failure to recognize an error will result in a miscarriage of justice, or if an error is so grave and serious that it strikes at the heart of the defendant's constitutional rights. *State v. Yoh*, 2006 VT 49A, ¶ 39, 180 Vt. 317, 910 A.2d 853 (quotation omitted). Defendant must show that the error "seriously affected defendant's substantial rights and had an unfair prejudicial impact on the jury's deliberations." *State v. Babson*, 2006 VT 96, ¶ 8, 180 Vt. 602, 908 A.2d 500 (mem.) (quotation omitted).

¶ 28. Here, the trial court's ruling to exclude the evidence under Rule 403 does not rise to the level of plain error. Cf. *State v. Erwin*, 2011 VT 41, ¶ 15, 189 Vt. 502, 26 A.3d 1 ("[T]he error must be so prejudicial that it undermines confidence in the outcome of the trial." (quotation omitted)); *State v. Koons*, 2011 VT 22, ¶ 11, 189 Vt. 285, 20 A.3d 662 (describing federal plain error analysis to require obvious error affecting substantial rights and resulting in prejudice to defendant that seriously affects fairness, integrity, or public reputation of judicial proceedings).

¶ 29. We agree that a defendant's constitutional right to present a defense and to confront witnesses limits the trial court's broad discretion to exclude evidence in criminal matters — where the evidence is otherwise relevant and admissible under the rules of evidence. See *In re A.B.*, 170 Vt. 535, 536, 740 A.2d 367, 369 (1999) (mem.); *State v. Corliss*, 168 Vt. 333, 337, 721 A.2d 438, 441 (1998); see also *Forty*, 2009 VT 118, ¶ 24 ("In general, exclusion of evidence that is not admissible does not violate the Sixth Amendment."). The trial court may still determine whether the probative value of proffered evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. V.R.E. 403; cf. *State v. Hill*, 174 Vt. 566, 567, 816 A.2d 440, 443 (2002) (mem.) ("[E]xclusion of . . . testimony [of questionable impeachment value that may confuse the witness and the jury] does not impinge on a defendant's right of confrontation and right to a fair trial.").

¶ 30. The trial court in this case excluded the evidence of complainant's prior drug use under Rule 403, finding that any probative value was outweighed by concerns of confusion of the issues for the jury and wasting time on collateral issues. The trial court had broad discretion when making this ruling. *State v. Brochu*, 2008 VT 21, ¶ 75, 183 Vt. 269, 949 A.2d 1035. It was understandably concerned that the jury might place too much weight on complainant's prior drug use and focus on her behavior, rather than on defendant's culpability for the charged attempted sexual assault — especially given that defendant did not specifically make the connection between drug use and the defense he now claims on appeal. See *id.* ¶ 67.

¶ 31. Contrary to defendant's contentions, the exclusion of this evidence did not prevent him from presenting a defense or introducing evidence to challenge complainant's credibility. At the trial court, defendant's theory of admissibility for the excluded evidence was that it would prove complainant's knowledge of him prior to the night in question. But defendant was allowed to present that evidence. He also testified that complainant had previously performed oral sex on him while they drove around on another occasion. Defendant's additional testimony that they did drugs on the previous occasion added nothing probative to the

evidence surrounding the charged incident. In addition — although this did not go to defendant's theory of admissibility below — evidence of complainant's intent to do drugs on the evening of the charged incident came in: complainant testified at trial that she entered defendant's truck that night because she wanted to smoke marijuana. Furthermore, despite defendant's argument otherwise, this was not a situation where the State's case rested solely on complainant's credibility. Cf. *State v. Hazelton*, 2006 VT 121, ¶ 20, 181 Vt. 118, 915 A.2d 224 (explaining that where credibility was key ingredient in "swearing contest" between complainant and defendant and no independently corroborating evidence existed, it was possible that erroneously admitted testimony influenced jury). For all these reasons, defendant fails to demonstrate that the jury was substantially affected by the exclusion of evidence of complainant's prior drug use with defendant. See *Babson*, 2006 VT 96, ¶ 10 (concluding no plain error where defendant failed to show jury was substantially affected by admission of challenged evidence).

¶ 32. The trial court did not commit plain error, if error at all, in excluding the evidence. Accordingly, we affirm.

*Affirmed.*